1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                      EASTERN DISTRICT OF CALIFORNIA

10  MAYNETTA LYNN SWINSCOE,          )   1: 10-cv-01614-AWI-BAM
                                     )
11                                   )   **FINDINGS   AND   RECOMMENDATIONS**
                                     )   **REGARDING PLAINTIFF'S**
12                   Plaintiff,      )   **SOCIAL SECURITY COMPLAINT**
                                     )
13      v.                           )
                                     )
14  MICHAEL J. ASTRUE,               )
    Commissioner of Social Security, )
15                                   )
                                     )
16                   Defendant.      )
    _____ )
17

18                        **I.   INTRODUCTION**

19          Pending before the Court is plaintiff Maynetta Lynn Swinscoe's ("Plaintiff") motion for

20  summary judgment and the cross-motion for summary judgment of defendant Commissioner of

21  Social Security ("Commissioner").  Plaintiff seeks judicial review of an administrative decision

22  denying her claim for Supplemental Security Income disability benefits pursuant to 42 U.S.C. §§

23  1381a and 1382c(a)(3)(A).  Plaintiff filed her complaint on September 6, 2010.  (Doc. 1.)

24  Plaintiff filed her summary judgment motion on June 20, 2011. ( Doc. 22.)   The Commissioner

25  filed his summary judgment cross-motion and opposition on September 6, 2011.  (Doc. 25.)

26  Plaintiff filed her Reply Brief on September 21, 2011 (Doc. 26.)  The matter is currently before

27  the Court on the parties' briefs, which were submitted without oral argument to United States

28

                                         1

1  Magistrate Judge Barbara A. McAuliffe for findings and recommendations to Chief United States

2  District Judge Anthony W. Ishii.

## II.    BACKGROUND

### A.    Overview of Administrative Proceedings

On July 17, 2007, Plaintiff filed an application for Supplemental Security Income

benefits.  (Administrative Record, "AR," at 110-120, Doc. 14.)  Plaintiff's application was

denied on initial review and again on reconsideration.  (AR at 72-76, 80-85.)  Thereafter,

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR at 86.)  On

September 24, 2009, the ALJ issued a written decision finding Plaintiff not disabled.  (AR at 7-

27.)  Plaintiff requested the Appeals Council review the ALJ's unfavorable decision and, on July

6, 2010, the Appeals Council declined to set aside the ALJ's decision.  (AR at 1-6.)  This final

action from the Appeals Council made the September 24, 2009 opinion the final decision of the

Commissioner.  Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. §

405(g).

### B.    Plaintiff's Background

Plaintiff was born on September 25, 1957.  (AR at 31.)  Plaintiff completed her twelfth

grade education, and obtained a Business Associates degree in business administration and

secretarial training.  (AR at 31-32.)  As recent as April of 2007, Plaintiff worked in a "front

clerical office" position.  (AR at 32.)  Plaintiff is currently able to read and write.  (AR at 32.)

Plaintiff is a single mother who lives with her eight year old daughter.  (AR at 32.)

Plaintiff lives in a mobile home unit, which is financed through the AFDC State Aid Program.

(AR at 32-33.)  Plaintiff has a driver's license, and owns a vehicle which she drives.  (AR at 33.)

Plaintiff alleges a disability onset date of November 1, 1999, due to the following

symptoms: neck and back pain; diabetes; vertigo; neuropathy in her hands and feet; arthritis in

her hands; a hernia; and concentration limitations. (AR at 150.)

/././

**C.     Plaintiff's Testimony At the Administrative Hearing**

On May 4, 2009, Plaintiff testified before the ALJ regarding her claim for disability.  (AR at 28-51.)  Plaintiff was represented by counsel.  George A. Meyers, an impartial vocational expert (the "VE"), also appeared at the hearing.  *Id.*

At the Administrative Hearing, Plaintiff provided testimony relating to her activities of daily living.  Plaintiff does basic house chores, including sweeping, mopping floors, washing dishes and gardening for five to ten minutes day.  (AR at 41, 49.)  Plaintiff testified that she drives herself to the grocery store, girl scout meetings, doctor's appointments, and that in a typical week, Plaintiff drives about two to three hours.  (AR at 33.)  Plaintiff tries to limit the amount of time she spends driving due to pain in her back. (AR at 33.)

Plaintiff testified that she can not perform any of her previous jobs because her spinal injuries and neuropathy and arthritis in her hands prevent her from getting on a computer monitor to type.  (AR at 34.)  Plaintiff's spine problems cause her "constant" pain in her neck and lower back.  (AR at 39.)  Plaintiff stated the neuropathy in her hands is a result of her diabetes.  (AR at 34.)   The neuropathy in Plaintiff's hand and feet causes swelling around two times a day. (AR at 40-41.)  Plaintiff also complained of pain and swelling in her knees.  (AR at 41.)

Plaintiff testified that she was restricted to lifting five to ten pounds.  (AR at 42.)  Plaintiff testified the longest she can sit in a chair before having to get up is 20 minutes.  (AR at 43.)  Plaintiff testified she can only stand for 20 to 30 minutes at a time, and she requires a cane to stand or ambulate.  (AR at 44-45.)  Plaintiff needs to elevate her legs three times a day for approximately 20 to 30 minutes.  (AR at 45.)  Plaintiff stated she has trouble reaching overhead or straight out due to pain in her neck.  (AR at 46.)  Plaintiff testified she can use her hands to grasp for ten minutes at a time.  (AR at 48.)  Plaintiff testified she can use her hands a bit more for things that do not require fine manipulation, like washing dishes, but not things like typing.  (AR at 49.)

/././

### 1.     Vocational Expert Testimony

After listening to Plaintiff's testimony, the VE characterized the nature of Plaintiff's past relevant work as a "secretary, DOT number 201.362.010."  (AR at 51.)  The VE testified that a person of the same age, education and work experience as Plaintiff, who could lift twenty pounds occasionally, ten pounds frequently, stand and sit for six hours in an eight hour day, and required a "sit/stand option" could perform Plaintiff's past relevant work as a secretary as it is performed in the national economy.  (AR at 51-52.)

**D.     Medical History**

The entire medical record was reviewed by the Court.  (AR at 132-518.)  The medical evidence will be referenced below to the extent it is necessary to the Court's decision.

**F.     ALJ Findings**

In reaching his decision that Plaintiff has not been under a disability within the meaning of the Social Security Act, the ALJ made the following findings:

1.     Plaintiff has not engaged in substantial gainful activity since July 17, 2007, the alleged onset date (20 CFR 416.971 *et seq.*);

2.     Plaintiff has the following severe impairments: diabetes, degenerative disc disease, asthma, and obesity.  (20 CFR 416.920(c));

3.     Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4.     Plaintiff's Residual Functional Capacity: Plaintiff has a residual functional capacity to perform a restricted range of sedentary work as defined in 20 CFR 416.967(a).  Plaintiff can lift up to 20 pounds occasionally, frequently stand or sit 6 hours in an 8 hour day, occasionally climb, stoop, kneel, crouch and crawl, and should avoid concentrated exposure to hazards such as machinery or working at heights.  Plaintiff requires a stand/sit option;

5.      Plaintiff is capable of performing past relevant work as a secretary.  This past

work does not require the performance of work-related activities precluded by

Plaintiff's residual functional capacity;

6.      Plaintiff does not have a disability within the meaning of the Social Security Act

since July 17, 2007, the date Plaintiff filed her application for disability benefits.

(AR at 10-27.)

## III.    DISCUSSION

### A.    Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision.
*See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an
ALJ, when the determination is not based on legal error and is supported by substantial evidence.
*See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  Substantial evidence is "more than a
mere scintilla," *see Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a
preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial
evidence "means such evidence as a reasonable mind might accept as adequate to support a
conclusion."  *Richardson*, 402 U.S. at 401.  If the evidence could reasonably support a finding of
either disability or non-disability, the finding of the Commissioner is conclusive.  *Sprague v.
Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

In order to qualify for benefits, a claimant must establish that he is unable to engage in
substantial gainful activity due to a medically determinable physical or mental impairment which
has lasted or can be expected to last for a continuous period of not less than twelve months.  42
U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of
such severity that he is not only unable to do his previous work, but cannot, considering his age,
education, and work experience, engage in any other kind of substantial gainful work which
exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).
The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th
Cir. 1990).

1    In an effort to achieve uniformity of decisions, the Commissioner has promulgated

2    regulations which contain, *inter alia*, a five-step sequential disability evaluation process.  20

3    C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found

4    that Plaintiff: (1) had not engaged in substantial gainful activity since July 17, 2007; (2) has an

5    impairment that is considered "severe" based on the requirements in the Regulations (20 CFR §§

6    416.920(c)); (3) does not have an impairment or combination of impairments which meets or

7    equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1; (4)  Plaintiff

8    has a residual functional capacity to perform a restricted range of sedentary work as defined in 20

9    CFR 416.967(a).  Plaintiff can lift up to 20 pounds occasionally, frequently stand or sit six hours

10   in an eight hour day.  Plaintiff can occasionally climb, stoop, kneel, crouch and crawl, and should

11   avoid concentrated exposure to hazards such as machinery or working at heights.  Plaintiff also

12   requires a stand/sit option; and (5) Plaintiff is capable of performing past relevant work as a

13   secretary.  (AR at 10-27.)

14   Plaintiff argues the ALJ's finding of non-disability is erroneous for three reasons: (1) The

15   ALJ improperly rejected the opinions of four medical professionals; (2) The ALJ improperly

16   rejected medical opinion testimony resulting in an erroneous Step Two finding; (3) The ALJ

17   improperly rejected Plaintiff's subjective symptom testimony; and (4) The ALJ's residual

18   functional capacity finding precluded a finding that Plaintiff could perform her past relevant

19   work as a secretary.

20   Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to

21   determine whether it is: (1) based on proper legal standards; and (2) supported by substantial

22   evidence in the record as a whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

23   **B.      The ALJ's Medical Opinion Testimony Evaluation**

24          **1.      Legal Standard**

25   In the hierarchy of physician opinions considered in assessing a social security claim,

26   "[g]enerally, a treating physician's opinion carries more weight than an examining physician's,

27   and an examining physician's opinion carries more weight than a reviewing physician's."

28   *Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir.2001); 20 C.F.R. § 404.1527(d)(1)-(2). The

opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).   The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506.   If contradicted by another doctor, the opinion of an examining doctor can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). "This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof." *Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir. 1989).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a treating physician, or any other medical source, if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).   Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability.  *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).   If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).   Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart,* 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir.1999).

**2.   Testimony of Dr. Donald Westbie**

Dr. Donald Westbie, Plaintiff's treating physician,  offered various opinions and observations between May of 2007 and April of 2008.  (AR at 215-294.) Plaintiff challenges the ALJ's rejection of Dr. Westbie's medical opinion testimony provided on April 14, 2008.  (Pl.'s Opening Brief, 10: 20-22, Doc. 22.)[1]

---

[1] The Commissioner's arguments in response to those presented in Plaintiff's Opening Brief are misplaced. The ALJ's analysis of Dr. Westbie's medical opinion testimony is scattered throughout a lengthy and otherwise thorough evaluation of medical evidence. *See,* AR at 14, 15, 18, 21, 22.  Dr. Westbie's medical opinions regarding Plaintiff's work limitations were not the same in 2007 and 2008, and the ALJ provided different reasons for

1    On April 14, 2008, Dr. Westbie reported to the agency that Plaintiff suffers from

2    persistent spinal pain, arthritis and brittle diabetes. (AR at 291-94.) Dr. Westbie opined Plaintiff

3    could sit for up to four hours a day, and stand or walk for up to two hours a day. *Id.* Dr. Westbie

4    also opined that Plaintiff was restricted in using her hands and fingers for repetitive motions due

5    to arthritis. (AR at 293.) Dr. Westbie concluded that Plaintiff's ability to work was severely

6    limited due to spinal and hand pain. (AR at 294.)

7    As Dr. Westbie's medical opinions were contradicted by at least one other medical

8    source, *see e.g.,* AR at 267-271, the ALJ was required to provide specific and legitimate reasons

9    supported by substantial evidence in the record to reject Dr. Westbie's opinions. *Andrews v.*

10   *Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

11   The ALJ gave "reduced weight" to Dr. Westbie's medical opinions for the following

12   reasons: (1) Other than stating the diagnosis, Dr. Westbie failed to provide a basis for the

13   restrictions; (2) Dr. Westbie made no mention of hand arthritis until he provided the April 14,

14   2008 report to the agency; (3) Plaintiff's current diabetes condition was the result of non-

15   compliance with proscribed treatment; and (4) the ALJ cited various portions of the record which

16   contradicted the extent and severity of Plaintiff's spinal limitations. (AR at 18-19, 25, 26.)

17   Plaintiff argues that Dr. Westbie did, in fact, assess Plaintiff with arthritis. Plaintiff also argues

18   that because the limitations opined by Dr. Westbie were the result of arthritic and spinal

19   problems, Plaintiff's noncompliance with prescribed treatment for her diabetes is irrelevant.

20   The ALJ provided specific and legitimate reasons for affording reduced weight to Dr.

21   Westbie's medical opinions. Prior to Dr. Westbie's report to the agency, the Record contains no

22

23   affording reduced weight to each of those opinions. *Compare,* AR at 14-15 *with* AR at 18; *compare also,* AR at
     211-214 *with* AR at 291-294. The Commissioner argues in support of the ALJ's evaluation of Dr. Westbie's

24   testimony by referring to the reasons offered for rejecting Dr. Westbie's 2007 opinions. *See,* Commissioner's Brief,
     5-7, Doc. 25. Plaintiff, however, argued only that the ALJ improperly rejected Dr. Westbie's April 2008 opinions.

25   *See,* Pl.'s Opening Brief, 10: 20-22, Doc. 22. To the extent Plaintiff responded to the Commissioner's arguments in
     her Reply Brief, or otherwise challenges the ALJ's findings with respect to other medical opinions offered by Dr.

26   Westbie, those issues were not raised in Plaintiff's Opening Brief, and are waived. *See Singh v. Ashcroft*, 361 F.3d
     1152, 1157 n. 3 (9th Cir.2004) (issues not raised in opening brief are typically deemed waived); *Jones v. Astrue*,

27   2010 WL 5111457 (E.D. Cal. 2010) (arguments raised for the first time in a reply brief are waived); *Zango, Inc. v.*
     *Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n. 8 (9th Cir.2009) ("arguments not raised by a party in an opening brief

28   are waived.") (citing *Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir.1990)). Accordingly, the only issue properly
     before the Court with respect to Dr. Westbie's medical opinion testimony concerns his April 14, 2008 opinions.

evidence that Dr. Westbie ever diagnosed Plaintiff with arthritis, or even mentioned that Plaintiff may be suffering from such a condition.  Rather, prior to the April 14, 2008 report, any pain in Plaintiff's hands was opined to be caused by neuropathy, which in turn was caused by Plaintiff's failure to follow her diabetes treatments.  Dr. Westbie's failure to indicate he ever assessed, treated, or even suspected Plaintiff suffered from arthritis prior to his conclusory diagnosis on April 14, 2008 is a specific and legitimate reason for rejecting this diagnosis.  *See Batson v. Comm'r.,* 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may properly reject a physician's opinion that is conclusory and unsupported by objective medical findings); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996) (the ALJ may reject physician reports that do not contain any explanation of the bases of their conclusions); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992.)

Plaintiff incorrectly asserts that Dr. Westbie's opinions on Plaintiff's limitations were unrelated to Plaintiff's diabetes.  On the contrary, in the April 14, 2008 report, Dr. Westbie specifically lists Plaintiff's brittle diabetes condition as one the primary reasons for her disability status.  (AR at 18-19.)  The Record is replete with medical opinions attributing the extent of Plaintiff's diabetes condition to Plaintiff's noncompliance with her treatment regimen.  (AR at 424-509.)   Plaintiff's noncompliance with her treatment regimen is a specific and legitimate reason for rejecting Dr. Westbie's conclusions.  *See* 20 C.F.R. §§ 404.1530(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled"); *Owen v. Astrue*, 551 F.3d 792 (8th Cir. 2008) (concluding that ALJ properly considered claimant's "noncompliance for purposes of determining the weight to give [doctor's] medical opinions"); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (stating that, "if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated"); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.")

The ALJ cited various portions of the record which contradict Dr. Westbie's opinions concerning the extent and severity of Plaintiff's spinal limitations.  (AR at 18-19, 25, 26.)  The

ALJ cited to portions of the Record indicating Plaintiff had a normal range of motion for all extremities, with no swelling or tenderness or distress.  (AR at 235, 267-271, 428, 444,  454.)  The ALJ noted that Plaintiff's CT scan of her cervical spine revealed no significant stenosis or disk bulge.  (AR at 248.)  X-rays of her spine revealed her condition to be mild.  (AR at 276, 329, 328, 331, 374).  An ALJ need not accept a treating physicians opinion when that opinion is not supported by objective medical evidence or clinical findings.  *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir.2001).  Accordingly, the ALJ provided specific and legitimate reasons for affording reduced weight to Dr. Westbie's opinions.

### 3.    Medical Opinion Testimony of Examining Psychologist Roxanne Morse And Reviewing Psychologist Archimedes Garcia

Plaintiff argues the ALJ erred in affording reduced weight to the medical opinions of State Agency Examining Psychologist Dr. Roxanne More, and State Agency Consultative Examiner Dr. Archimedes Garcia.  Plaintiff argues that if the ALJ had accepted the opinions of Dr. Morse and Dr. Garcia, Plaintiff would have been found to have a "severe" mental impairment at Step Two, and furthermore, Plaintiff's residual functional capacity finding would have limited her to simple, repetitive tasks.

### i.    Dr. Roxanne Morse

Examining Psychologist Dr. Roxanne Morse evaluated Plaintiff at the request of the agency on October 5, 2007.  (AR at 278.)  Plaintiff reported feeling depressed on an intermittent basis.  (AR at 279.)  Dr. Morse conducted a battery of tests, during which Plaintiff appeared to display adequate effort and persistence.  (AR at 280.)

Dr. Morse made the following findings: Plaintiff could follow two-step commands; Plaintiff was alert and oriented to time, place, person and situation; Plaintiff displayed adequate attention and concentration for conversation; Plaintiff's memory for recent, immediate and remote events appeared to be mildly impaired; Plaintiff's ability to perform simple mathematical calculations in her head was good; Plaintiff's verbal reasoning was intact; Plaintiff was able to answer questions requiring common sense and abstract reasoning; Plaintiff did not display any symptoms of a thought disorder during the evaluation; Plaintiff's verbal IQ, performance IQ and

10

full scale IQ scores fell between the low average to average range; Plaintiff's short term memory was markedly impaired; Plaintiff's long term memory was mildly impaired; Plaintiff's short term visual memory was mildly impaired; and Plaintiff's long term visual memory was moderately impaired.  (AR at 280-281.)

Based on these findings, Dr. Morse found that Plaintiff "appears to be currently experiencing symptoms that meet the criteria for a DSM-IV-TR diagnosis of Adjustment Disorder With Depressed Mood. Plaintiff also meets the criteria for a DSM-IV-TR diagnosis for a Pain Disorder Associated With Psychological Factors and a General Medical Condition."  (AR at 281.)

Dr. Morse qualified these results, however, "not[ing] that the present evaluation was limited in scope.  It was based on only 1 session of client contact, in a structured environment and with pre-authorized tests.  Background and correlative information was considered to be limited." (AR at 281.)  Dr. Morse also noted that "[t]he claimant was able to understand, remember, and carry out simple, detailed, and complex instructions." (AR at 282.)  Dr. Morse concluded that "[Plaintiff] is likely to perform optimally in a work environment requiring repetitive tasks due to her problems with memory." *Id.*

The ALJ gave "reduced weight" to this opinion, stating that "[t]he claimant has received no mental health treatment whatsoever since her alleged onset date, and the medical evidence from her treating physicians does not indicate that she is depressed or has any mental impairment." (AR at 16.)  At least one physician partially contradicted[2] Dr. Morse's findings, thus, the ALJ was required to provide specific and legitimate reasons to afford reduced weight to Dr. Morse's opinions. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

First, the Court notes that Dr. Morse did not impose the "simple, repetitive" task restrictions argued by Plaintiff.  Rather, Dr. Morse stated that Plaintiff "is likely to perform optimally in a work environment requiring repetitive tasks." (AR at 282.)  This statement does

---

[2] For example, while Dr. Morse opined it was "likely" Plaintiff would have difficulty adapting to change in her routine in her work-related settings (an opinion Plaintiff argues precludes the ALJ's Step Four finding), Dr. Garcia concluded Plaintiff would not be significantly limited in her ability to respond appropriately to changes in the work setting. *Compare,* AR at 282 *with* AR at 315.

1   not opine that Plaintiff *can not* perform detailed or complex tasks.  On the contrary, Dr. Morse's

2   findings indicate Plaintiff *can* in fact perform detailed and complex tasks, even if she were more

3   "optimally" placed in a position requiring simple, repetitive tasks.  *See,* AR at 282 ("[t]he

4   claimant was able to understand, remember, and carry out simple, detailed, and complex

5   instructions.")

6          A residual functional capacity does not concern optimal job placement for a claimant.

7   Rather, residual functional capacity represents "what [one] can still do despite [one's]

8   limitations." 20 C.F.R. § 416.945(a);  *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).

9   Moreover, when coupled with Dr. Morse's qualifications to her findings, *see* AR at 281, Dr.

10  Morse's equivocating statements concerning Plaintiff's "optimal" placement - as opposed to her

11  work related limitations - fail to substantiate Plaintiff's burden to demonstrate disability at Step

12  Four.  *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998) ("It is Plaintiff's burden to

13  demonstrate disability st Step Four.") The ALJ has the responsibility for resolving these

14  ambiguities in the Record, and a Court will not disturb an ALJ's findings if they are reasonable.

15  *Vincent ex. Rel. Vincent v. Heckler,* 739 F.2d 577, 579 (9th Cir. 1984); *Key v. Heckler,* 754 F.2d

16  1545, 1549 (9th Cir. 1985).

17         Regardless, the ALJ provided specific and legitimate reasons for affording reduced

18  weight to Dr. Morse's opinions.  Plaintiff's complete failure to seek mental health treatment is a

19  specific and legitimate reason to discount Dr. Morse's testimony.  *Meanal v. Apfel*, 172 F.3d

20  1111, 1114 (9th Cir. 1999) (ALJ properly considered failure to request serious medical treatment

21  for supposedly excruciating pain); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (failure to

22  assert good reason for not seeking treatment can cast doubt on claimant's sincerity); *Richardson*

23  *v. Astrue,* 2011 WL 3273255 (W.D. Wash. 2011) (It was proper to discount testimony

24  concerning mental impairment claims when the evidence in the record did not establish a

25  legitimate excuse for failing to seek treatment).

26         Additionally, Plaintiff was seeing a treating physician for various ailments apparently

27  resulting in disability, however, Plaintiff's treating physician's notes, as well as his report to the

28  ALJ, make no mention of any possible mental limitations.  This, too, is a specific and legitimate

reason to discount Dr. Morse's testimony. *Hunter v. Astrue,* 2008 WL 205245 (E.D. Cal. 2008) (finding that a claimant's failure to mention significant symptoms to her treating physician is a clear and convincing reason); *Gibrich v. Astrue,* 2010 WL 2727276 (W.D. Wash., 2010) ("the lack of any mention in the treatment records could be significant as evidence that plaintiff never mentioned any limitations due to his weight as part of his complaints or as part of his medical history."); *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982) (an ALJ is "entitled to draw inferences logically flowing from the evidence").

Lastly, as the Commissioner correctly points out, Dr. Morse's findings contradict her disability conclusions. *Compare* AR at 282 ¶ 3 ("[t]he claimant was able to understand, remember, and carry out simple, detailed, and complex instructions,") *with* AR at 282 ¶ 7 ("[Plaintiff is likely to perform optimally in a work environment requiring repetitive tasks due to her problems with memory.") The Commissioner may properly reject a physician's opinion that conflicts with the physician's own treatment notes. *Connett v. Barnheart,* 340 F.3d 871, 875 (9th Cir. 1995).

### ii.     Dr. Archimedes Garcia

State Agency Consultative Examiner Dr. Archimedes Garcia reviewed Plaintiff's medical file, and concluded Plaintiff suffers from a Somatoform Disorder and an Affective Disorder. (AR at 303.)  Dr. Garcia opined that Plaintiff had moderate limitations with respect to her ability to maintain concentration, persistence, pace, as well as her ability to understand, remember and carry out detailed instructions.  Dr. Garcia concluded that Plaintiff was "[a]ble to understand and remember work locations and procedures of a simple, routine nature involving 1-2 step job tasks and instructions," and "would be able to sustain [an 8-40 hour] work schedule on a sustained basis."  (AR at 316.)

The ALJ afforded reduced weight to Dr. Garcia's opinions for the same reasons discussed with respect to Dr. Morse's opinions, stating that "[t]he claimant has received no mental health treatment whatsoever since her alleged onset date, and the medical evidence from her treating physicians does not indicate that she is depressed or has any mental impairment."  (AR at 16.)

The Court notes that, contrary to Plaintiff's arguments, Dr. Garcia did not "limit" Plaintiff to "simple, routine" tasks.  Rather, Dr. Garcia stated Plaintiff was *able* to perform those tasks, and made no opinion on whether Plaintiff could perform more difficult or complicated tasks, or otherwise noted whether Plaintiff was *limited* to simple, routine tasks.   A residual functional capacity finding concerns the highest level of work a claimant can perform, not merely exertional capabilities without reference to limitations.   *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).

For the same reasons discussed above, the ALJ nonetheless provided specific and legitimate reasons for discounting Dr. Garcia's opinions.  Plaintiff's complete failure to seek mental health treatment is a specific and legitimate reason to discount Dr. Morse's testimony. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989); *Richardson v. Astrue,* 2011 WL 3273255 (W.D. Wash. 2011) (finding the ALJ's discounting testimony concerning mental impairment claims were valid when the evidence in the record did not establish a legitimate excuse for failing to seek treatment).   The lack of reference to any mental impairment in any of Plaintiff's treating physician's notes is also a specific and legitimate reason based on substantial evidence. *Hunter v. Astrue,* 2008 WL 205245 (E.D. Cal. 2008) (finding that a claimant's failure to mention significant symptoms to her treating physician is a clear and convincing reason); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is "entitled to draw inferences logically flowing from the evidence").

Moreover, Dr. Garcia never met Plaintiff, and his opinions were based on his evaluation of the medical record.  The only information in the record concerning Plaintiff's mental health condition was provided by Dr. Morse.  As such, the ALJ was warranted in discounting Dr. Garcia's opinions where they were based entirely on the opinions of a discredited physician.  *See Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit physicians' opinions that are conclusory, brief, and unsupported by record as a whole or by objective medical findings); *Burkhart v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir.1988) (ALJ properly rejected treating physicians' opinion which was unsupported by medical findings, personal observations or test reports).

### iii.   The ALJ Did Not Err At Step Two

Plaintiff argues that because the ALJ gave insufficient reasons to reject Dr. Morse's and Dr. Garcia's opinions concerning the severity and limiting effects of Plaintiff's mental disorder, the ALJ erred at Step Two.  An impairment or combination of impairments may be found not severe if the alleged impairment "has not more than a minimal effect on an individual's ability to work."  *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005).

The ALJ provided specific and legitimate reasons to discount the opinions of Dr. Morse and Dr. Garcia.  Additionally, neither Dr. Morse, nor Dr. Garcia provided the limitations suggested by Plaintiff.  Accordingly, the ALJ did not err at Step Two.

### 4.   Medical Opinion Testimony of Physician's Assistant King

Plaintiff argues the ALJ improperly rejected the opinions of Physician's Assistant Kelly King.  Ms. King opined that Plaintiff is limited in manipulating with her hands - reaching, handling, feeling, pushing/pulling and grasping - for up to 5% of the workday, and that Plaintiff needed to lie down for fifteen minutes every sixty to ninety minutes.  (AR at 422-23.)

Nurse practitioners and physician's assistant are not "acceptable medical source[s]."  20 C.F.R. § 404.1513(a)(3).  They are, however, "other source[s]" that receive some consideration.  20 C.F.R. § 416.913(d).  At a minimum, an ALJ should treat these medical professionals' opinions with as much consideration as a lay witness and give reasons supported by substantial evidence for rejecting it.  *Vincent on behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984).

Lay witness testimony regarding a claimant's symptoms is "competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir.2001); *Bayliss v. Barnheart,* 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of a lay witness.")  In rejecting lay witness testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does not "clearly link his determination

1   to those reasons" and substantial evidence supports the ALJ's decision. *Lewis*, 236 F.3d at 512.

2   The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*,

3   694 F.2d 639, 642 (9th Cir.1982).

4          The ALJ provided germane reasons based on substantial evidence in the record in

5   discounting Ms. King's opinions.  The ALJ noted that the limitations suggested by Ms. King

6   were primarily based on Plaintiff's uncontrolled diabetes, despite Ms. King's expressed belief

7   that this was attributable to Plaintiff's non compliance with her treatment regimen.  (AR at 20.)

8   Plaintiff's noncompliance with her treatment regimen is a specific and legitimate reason for

9   rejecting Ms. King's conclusions.  *See* 20 C.F.R. §§ 404.1530(b) ("If you do not follow the

10  prescribed treatment without a good reason, we will not find you disabled"); *Owen v. Astrue*, 551

11  F.3d 792 (8th Cir. 2008) (concluding that ALJ properly considered claimant's "noncompliance

12  for purposes of determining the weight to give [doctor's] medical opinions"); *Orn v. Astrue*, 495

13  F.3d 625, 638 (9th Cir. 2007) (stating that, "if a claimant complains about disabling pain but fails

14  to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such

15  failure as a basis for finding the complaint unjustified or exaggerated"); *Warre v. Comm'r of Soc.*

16  *Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006); ("Impairments that can be controlled

17  effectively with medication are not disabling for the purpose of determining eligibility for SSI

18  benefits.")

19         The ALJ also noted that objective medical findings, including MRIs and CT scans, did

20  not support the recommended limitations.  (AR at 19-25.)  Inconsistency with medical evidence

21  is a germane reason for discounting lay witness testimony. *Bayliss v. Barnhart*, 427 F.3d 1211,

22  1218 (9th Cir. 2005); *Lewis,* 236 F.3d at 511.

23  **C.**     **The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony**

24         **1.**     **Legal Standard**

25         A two step analysis applies at the administrative level when considering a claimant's

26  subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the

27  claimant must produce objective medical evidence of an impairment that could reasonably be

28

expected to produce some degree of the symptom or pain alleged.  *Id*. at 1281-1282.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings that include clear and convincing reasons for doing so.  *Id*. at 1281.  The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen,* 80 F.3d at 1284; *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007).

### 2. The ALJ Provided Clear and Convincing Reasons For Rejecting Plaintiff's Subjective Symptom Testimony

Plaintiff argues the ALJ improperly rejected Plaintiff's subjective symptom testimony.  Specifically, Plaintiff argues that the ALJ failed to apply SSR 82-59 with respect to Plaintiff's noncompliance with her diabetes treatment regimen.  Under SSR 82-59, a failure to follow a specific treatment regimen can result in an otherwise disabled claimant being determined to be non-disabled when certain conditions are met.  According to Plaintiff, because the ALJ failed to discuss these conditions or mention SSR 82-59, the determination that Plaintiff's noncompliance

1    with her treatment regimen was a contributing factor to the ALJ's finding of non-disability was

2    legal error.

3          SSR 82–59 is not applicable under these circumstances. While SSR 82–59 deals with the

4    issue of noncompliance, the ruling applies only if a claimant, despite her noncompliance with

5    treatment, would be found to be disabled. *Crease v. Astrue,* 2012 WL 380277 (N.D. Cal. 2012).

6    SSR 82–59 states, inter alia, that "[i]ndividuals with a disabling impairment which is amenable

7    to treatment that could be expected to restore their ability to work must follow the prescribed

8    treatment to be found under a disability, unless there is a justifiable cause for the failure to follow

9    such treatment."  As the court explained in *Owen v. Astrue,* 551 F.3d 792 (8th Cir.2008), SSR

10   82–59 " 'explains the circumstances in which the Secretary may deny benefits to an otherwise

11   disabled individual on the basis that the claimant has failed to follow ... prescribed treatment' and

12   'only applies to claimants who would otherwise be disabled within the meaning of the Act.' " *Id.*

13   at 800 n. 3.  Here the ALJ did not find Plaintiff's failure to follow prescribed treatment was the

14   cause of a disability finding.  Rather, the ALJ found Plaintiff was not disabled, regardless of her

15   noncompliance with treatment. *Crease v. Astrue,* 2012 WL 380277 (N.D. Cal. 2012) (finding

16   that SSR 82-59 does not apply when the ALJ does not find the claimant disabled.)

17         Moreover, contrary to what Plaintiff suggests, a claimant's noncompliance may be

18   considered in initially evaluating whether there is a disability in the first instance. *See, e.g. Orn*

19   *v. Astrue*, 495 F.3d 625, 638 (9th Cir.2007) (stating that, "if a claimant complains about disabling

20   pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may

21   use such failure as a basis for finding the complaint unjustified or exaggerated"); *Fair v. Bowen*,

22   885 F.2d 597, 603 (9th Cir.1989) ("[A]n unexplained, or inadequately explained, failure to ...

23   follow a prescribed course of treatment ... can cast doubt on the sincerity of the claimant's pain

24   testimony").  Thus, it was fair for the ALJ to take note that Plaintiff's symptoms were the result

25   of her noncompliance with diabetes treatment.

26         The ALJ provided several other clear and convincing reasons to reject Plaintiff's

27   subjective symptom testimony.  The ALJ correctly noted that Plaintiff's own statements did not

28

support her claimed limitations.  (AR at 25) ("On September 11, 2009, she stated that she was sleeping well, and Percocet was working very well for her . . .  She said she was 'actually able to feel productive and get things done. . .' On January 26, 2009, she reported she stayed up most of the night cooking and was trying to put something together for a local community family. . . On May 29, 2007, she reported being 10/10, but inexplicably she was in no acute distress . . .On June 26, 2007 she was taking Tylenol and was in no acute distress . . . She was in no acute distress on May 5, 2008 . . . May 29, 2008 . . . July 17, 2008 . . . August 7, 2008.")  Plaintiff's inconsistent statements are clear and convincing reasons to reject her testimony.  *See Smolen,* 80 F.3d at 1284; *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007).

The ALJ noted that objective medical evidence did not support Plaintiff's symptoms. (AR at 25) (On July 26, 2007 and August 25, 2008 she had normal range of motion of all extremities with no swelling or tenderness); (AR at 26) (" a CT scan of the cervical spine revealed no significant stenosis or disk bulge . . . She had full range of motion of the cervical and lumbar spine on September 15, 2007 . . .)  The ALJ also referred to several other x-rays and MRIs demonstrating Plaintiff's condition to be mild.  (AR at 26.) While objective medical evidence can not be the sole reason to reject a claimant's subjective symptom testimony, it can be considered among other factors, and an ALJ need not regard a claimant's self-serving statements to the extent they are unsupported by objective findings.  *Nyman v. Heckler,* 779 F.2d 528, 531 (9th Cir. 1986).

Lastly, the ALJ noted evidence that Plaintiff was exaggerating her symptoms: "Finally, I note that claimant testified she always used a cane, and has done so for two years.  However on January 8, 2008 physical therapy notes indicate that she was not using an assistive device.  (AR at 26.)  This evidence of malingering arguably relieved the ALJ from the burden of providing specific, clear, and convincing reasons to discount Plaintiff's testimony.  *Baghoomian v. Astrue,* 319 Fed. Appx. 563, 566 (9th Cir. 2009). Nonetheless, the ALJ met this standard in articulating her reasons for rejecting Plaintiff's testimony regarding the severity of her physical ailments.

**D.    The ALJ Did Not Err At Step Four**

At step-four of the sequential evaluation process, a claimant must establish that his or her severe impairment or impairments prevent him or her from doing past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).  The regulations explain the step-four evaluation: "If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled."  20 C.F.R. §§ 404.1520(e); 416.920(e).  The claimant has the burden of showing that he or she can no longer perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 331-32 (9th Cir. 1990).

Plaintiff argues the ALJ erred at Step Four because, according to the ALJ's residual functional capacity finding, Plaintiff requires a job in which she can stand or sit "at will."  The Commissioner responds that the ALJ did not restrict Plaintiff to a stand/sit "at will" position, but rather, found Plaintiff required a stand/sit option, not otherwise defined.

The ALJ did not err at Step Four.  The ALJ did not find Plaintiff requires a stand/sit option "at will."  As the Commissioner correctly points out, the ALJ found that Plaintiff required a stand/sit option, not otherwise defined.  At the administrative hearing, the VE testified that an individual such as Plaintiff, who required a "stand/sit option," could perform secretarial work as it is performed in the national economy.  (AR at 52.)

A vocational expert's testimony will constitute substantial evidence when the ALJ poses a hypothetical based on medical assumptions supported by substantial evidence in the record reflecting each of the claimant's limitations.  *Andrews v. Shalal*, 53 F.3d 1035, 1044 (9th Cir. 1995).  As there is substantial evidence in the record to support the ALJ's medical assumptions concerning Plaintiff's limitations, the VE's testimony that Plaintiff can perform her past relevant work, despite her need for a stand/sit option, is substantial evidence.  *See, Bayliss,* 427 F.3d at

1218. (The vocational expert's "recognized expertise provides the necessary foundation for his or her testimony . . . no additional foundation is required.")

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court RECOMMENDS that:

      1.     Plaintiff's motion for summary judgment be DENIED;

      2.     The Commissioner's cross-motion for summary judgment is GRANTED;

      3.     The Clerk of Court enter judgment in favor of the Commissioner of Social Security, and against Plaintiff Maynetta Lynn Swinscoe.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

      IT IS SO ORDERED.

**Dated:**   **June 18, 2012**           **/s/ Barbara A. McAuliffe**
                                     UNITED STATES MAGISTRATE JUDGE